UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
In re

| | |
|---|---|
| Daniel F. and Wendy J. Alguire | Case No. 08-10691 K |
| John LoGrippo | Case No. 08-10695 K |
| Scott R. Fullington | Case No. 08-10744 K |
| Patrice and Joseph Quinn | Case No. 08-10783 K |
| Emory M. Jones | Case No. 08-10833 K |
| Michael C. and Lisa M. Brown | Case No. 08-10837 K |
| Alexandria M. Weber | Case No. 08-10979 K |
| Alvin E. Way & Regina M. Iannello | Case No. 08-10988 K |
| Daniel L. and Karen A. Appleman | Case No. 08-11171 K |
| Amanda R. Baker | Case No. 08-11404 K |
| Paul W. and Erika D. Shoup | Case No. 08-11408 K |
| Christopher J. and Tori L. Robinson | Case No. 08-11471 K |
| Michael E. and Charlene G. Shaffer | Case No. 08-11515 K |
| Frederick H. and Kimberly L. Amey | Case No. 08-11519 K |

Debtor
-------------------------------------------------------------------

ORDER AND OPINION REGARDING ECONOMIC STIMULUS

Against the backdrop of the fact that one never knows what one's liability to the Internal Revenue Service might be until Congress stops making retroactive amendments to the Tax Code, this Court has before it many variations on the single theme of "who gets Economic Stimulus Act monies that arrive after the filing of a petition?"

In one case, the Economic Stimulus Act of 2008[1] ("ESA") was enacted before the filing of the petition, and if the check is treated as a "tax refund" for 2007 taxes, the Debtor has an exemption available to claim on it.

---

[1] After setting forth the formula for computing the Stimulus amount, P.L. 110-185, § 101(g)(1) states that "Each individual who was an eligible individual for such individual's first taxable year beginning in 2007 shall be treated as having made a payment against the tax imposed by chapter 1 for such first taxable year in an amount equal to the advance refund amount for such taxable year."

In another case (or cases), the Debtor has no available exemption, and claims that because the ESA of 2008 was not enacted until <u>after</u> the filing of his/her petition, it is post-petition property, not part of the § 541 estate.

In another case (or cases) in which no exemption is available, it is argued that the check was simply a postpetition "gift," which the U.S. intended to be spent to stimulate the economy, not to be seized to pay the outstanding debt on old purchases.

In another case or cases, the cash exemption is available, but the check was not yet "cash" on the petition date and it is argued that it makes no difference whether the check is viewed as a refund of 2007 taxes or not, and makes no difference that it was not yet "cash."

In another case (or cases) it is argued that regardless of the date of enactment of the ESA of 2008, and regardless of how it was written, the right to the check did not vest until it was received, rendering it post-petition property, for which no exemption is necessary.

The Court has waived the formality of requiring the various debtors to amend their arguments to adopt the arguments made by other debtors. All will be deemed to benefit from the arguments of others. But no one will be deemed to concede another debtor's argument that, if accepted, would foreclose his or her own argument.

The Trustees, for their part, argue as follows.

The ESA checks cannot be tax refunds because the debtors never paid those moneys to the IRS. [2]

---

[2] Cf. *In re Kathleen W. Wrobel*, No. 00-16168 K (Bankr. W.D.N.Y. 2001), regarding the "Earned Income Tax Credit."

The cash exemption cannot be used in New York, because the New York cash exemption is limited to "cash in the bank" on the date of the petition, and the right to tax refunds. The right to the check vested pre-petition, and is simply a "receivable," "rooted in the pre-bankruptcy past," and, as such, collectable by the Trustee.

In response to this last point, some debtors argue that the checks were held in trust for them by the Internal Revenue Service, and should be viewed as "cash in the bank."

The ESA of 2008 statute answers some of the background questions. It unequivocally ties the checks to the 2007 Income Tax Liability. It declares that what the taxpayer is to receive in the check is to be viewed as an extra payment on the 2007 tax liability. That makes it clear that the check either increases a refund or provides a refund for a taxpayer who owed the Internal Revenue Service and has paid it.

In the Court's view, this completely resolves some of the cases at Bar. The Court rules that where the petition was filed after the enactment of the ESA of 2008, the check can be exempted as a "tax refund" if the cash exemption is available.

Of necessity, this ruling rejects the notion that no right to the check vested until it was received. It also rejects the notion that a "refund" of monies never actually paid by a debtor cannot be a "tax refund." The incentive amounts are deemed by statute to have been paid, and when Congress wishes to create a fictional payment or overpayment of 2007 taxes, that is law, not to be questioned by this Court.

As to cases in which a cash exemption is available, this leaves the cases that were filed before enactment of the ESA of 2008. If Congress creates, after filing of a bankruptcy case,

a fictional payment for 2007 tax liabilities, does it "relate-back" to the end of the 2007 tax year or to April 15, 2008, or does it not relate-back at all?

It is the decision of the Court to liken that issue to the one presented in *In re Gross Plumbing & Heating Co., Inc.*, 146 B.R. 914, 23 B.C.D. 971 (Bankr. W.D.N.Y. 1992). In that case, the context was very different, but the principle is the same. In *Gross Plumbing*, the Court ruled that when computation of a liability of a debtor awaits a statutory audit, the result of the post-petition audit simply amends the claim. The fact that the audit occurs post-petition does not turn any additional liability into a post-petition claim. Some of the cases before the Court are simply the flip-side. What is good for the "debt side" is good for the "asset side." Congress decided to restructure and re-calculate the pre-petition tax liabilities of the debtors, and did so by statute. Just as the debt increase in *Gross* related back to the pre-petition claim of an unemployment insurance fund, the income tax liability of these debtors was "recalculated" (i.e. "reduced") by statute, and relates back to the pre-petition size of the debtor's tax refund, yielding a larger asset.

This resolves all disputes where the cash exemption for a tax refund is available.

This leaves only the cases in which no cash exemption is available, and the debtors' claim that the checks are a post-petition "gift," not property of the estate, and the Debtors' property regardless of the availability of an exemption.

In a very generic sense, the checks are indeed a "gift." But in legal sense, Congress chose not to go that route. Had it chosen not to tie the program to the 2007 taxes, it could have simply declared that every family, or every man, woman, and child, would be sent a

check to boost the economy, as a "grant."

The Court must presume that Congress considered and rejected that approach. It selected the linkage to the 2007 taxes. Therefore, the Court rejects the "gift" argument.

The result is no different than if Congress simply chose to retroactively reduce the 2007 tax rates, and, as noted at the outset, one must live with the fact that one never knows what one's liability is to the Internal Revenue Service until Congress stops making amendments, retroactive to the 2007 tax year.

In sum, the ESA of 2008 is analogous to a retroactive reduction in 2007 tax rates: As such, the only debtors who lose are those who have no cash exemption available to them. Please promptly settle orders accordingly in each of the above captioned cases.[3]

SO ORDERED.

Dated:   Buffalo, New York
         June 24, 2008

                                        s/Michael J. Kaplan
                                        _____
                                        U.S.B.J.

---

[3] The Court is aware that the parties were of the belief that these cases were not fully briefed for decision, and were expecting a scheduling order only. However, the cases involving this question are being added to the "under consideration" list daily, and it is important to provide a final ruling in the cases that do not require more. Any party may move for rehearing within 10 days, as to their case.